THE PEOPLE OF THE STATE OF NEW YORK ex rel. CON-
SOLIDATED WATER COMPANY OF UTICA, Appellant,
against MILO R. MALTBIE et al., Constituting the
Public Service Commission of the State of New York,
Respondents.

Argued May 25, 1937; decided July 13, 1937.

*Thayer Burgess, Neile F. Towner, T. Harvey Ferris* and *George H. Kenny* for appellant. The Appellate Division erred when it failed to annul the determination of the Commission. (*Matter of New Rochelle Water Co*

v. *Maltbie*, 248 App. Div. 66; *Matter of New York Edison Co.* v. *Maltbie*, 244 App. Div. 436; *Matter of Brooklyn Union Gas Co.* v. *Maltbie*, 245 App. Div. 74; *People ex rel. Stephenson* v. *Bingham*, 205 N. Y. 168; *People ex rel. Hempstead* v. *Tax Comrs.*, 214 N. Y. 594.) The valuation of the company's property at depression spot prices is illegal, and is confiscatory as a matter of law. (*Matter of Peoples Gas & Electric Co.* v. *Public Service Comm.*, 214 App. Div. 108; *New York Tel. Co.* v. *Prendergast*, 300 Fed. Rep. 822; *Los Angeles Gas & Electric Corp.* v. *Railroad Comm.*, 289 U. S. 287; *McCardle* v. *Indianapolis Water Co.*, 272 U. S. 400; *State of Missouri ex rel. Southwestern Bell Tel. Co.* v. *Public Service Comm.*, 262 U. S. 276; *West* v. *Chesapeake & Potomac Tel. Co.*, 295 U. S. 662; *Georgia Ry. & Power Co.* v. *Railroad Comm.*, 262 U. S. 625; *Galveston Electric Co.* v. *Galveston*, 272 Fed. Rep. 147; 258 U. S. 388; *State* v. *Dept. of Public Works*, 51 Pac. Rep. [2d] 610.) The denial of a rehearing, sought to establish a reversal of price trends, was a denial of constitutional right. (*Baltimore & Ohio R. R. Co.* v. *United States*, 298 U. S. 349; *Atchison, T. & S. F. Ry. Co.* v. *United States*, 284 U. S. 248.) The methods used by the Commission in determining the " cost " of the company's property were erroneous and confiscatory as a matter of law. (*McCardle* v. *Indianapolis Water Co.*, 272 U. S. 400; *Los Angeles G. & E. Corp.* v. *Railroad Comm.*, 289 U. S. 287; *Clark's Ferry Bridge Co.* v. *Public Service Comm.*, 291 U. S. 227; *Alton Water Co.* v. *Illinois Commerce Comm.*, 279 Fed. Rep. 869; *St. Joseph Ry., L., H. & P. Co.* v. *Public Service Comm.*, 268 Fed. Rep. 267.) The Commission disregarded the actual cost of the properties acquired by the company in 1899. (*San Diego Land & Town Co.* v. *Jasper*, 189 U. S. 439; *Dow* v. *Beidelman*, 125 U. S. 680; *Los Angeles G. & E. Corp.* v. *Railroad Comm.*, 289 U. S. 287; *Westchester Street R. R. Co.* v. *Public Service Comm.*, 210 N. Y. 456; *Matter of Seneca Oil Co.*, 153 App. Div. 594; 208 N. Y. 545;

*Matter of New York Edison Co.* v. *Maltbie,* 244 App. Div. 685; 271 N. Y. 103; *People ex rel. Iroquois Gas Corp.* v. *Public Service Comm.*, 264 N. Y. 17.) The return allowed by the Commission is inadequate, unreasonable and confiscatory. (*McCardle* v. *Indianapolis Water Co.*, 272 U. S. 400; *United Rys.* & *Electric Co.* v. *West*, 280 U. S. 234; *West* v. *Chesapeake* & *Potomac Tel. Co.*, 295 U. S. 662; *Lindheimer* v. *Ill. Bell Telephone Co.*, 292 U. S. 151; *Smith* v. *Illinois Bell Tel. Co.*, 282 U. S. 133; *Bluefield Water Co.* v. *Public Service Comm.*, 262 U. S. 679.) The Appellate Division should have exercised its independent judgment as to the facts upon the issue of confiscation. (*Matter of Rockland Light & Power Co.* v. *Maltbie*, 241 App. Div. 122; *Matter of New Rochelle Water Co.* v. *Maltbie*, 248 App. Div. 66; *Crowell* v. *Benson*, 285 U. S. 22; *Ohio Valley Co.* v. *Ben Avon Borough*, 253 U. S. 287; *St. Joseph Stockyards* v. *United States*, 80 L. Ed. 679.)

*Gay H. Brown, George E. McVay* and *Raymond J. McVeigh* for respondents. There was evidence to support the Commission's determination as to the depreciable property upon which the company was entitled to earn a return. (*Minnesota Rate Cases*, 230 U. S. 352; *City of Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1; *Lindheimer* v. *Illinois Bell Tel. Co.*, 292 U. S. 151; *People ex rel. New York & Queens Gas Co.* v. *McCall*, 219 N. Y. 84; *Niagara Falls Power Co.* v. *Water Power & Control Comm.*, 267 N. Y. 265.) There was evidence to support the Commission's determination as to the non-depreciable property upon which the company was entitled to earn a return. (*Columbus Gas Co.* v. *Comm. of Ohio*, 292 U. S. 398; *United Fuel Gas Co.* v. *Public Service Comm.*, 14 Fed. Rep. [2d] 209; 278 U. S. 322; *Lindheimer* v. *Illinois Bell Tel. Co.*, 292 U. S. 151; *Matter of Yonkers Electric Light & Power Co.* v. *Maltbie*, 271 N. Y. 364; *Dayton Power & Light Co.* v. *Public Utilities Comm.*, 292 U. S. 290; *St. Joseph Stock Yards Co.* v. *United*

*States,* 298 U. S. 38.) The Commission properly determined the value of all property owned by the company upon which it was entitled to earn a return. (*Lincoln Gas & El. L. Co.* v. *City of Lincoln,* 223 U. S. 349; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19; *Minnesota Rate Cases,* 230 U. S. 352; *City of Houston* v. *Southwestern Bell Tel. Co.,* 259 U. S. 318; *Bluefield Water Works & Improvement Co.* v. *Public Service Comm.,* 262 U. S. 679; *Los Angeles Gas & E. Corp.* v. *Railroad Comm.,* 289 U. S. 287.) The rate of return allowed by the Commission is fair and reasonable. (*Smith* v. *Illinois Bell Tel. Co.,* 282 U. S. 133.) Appellant's application for rehearing was properly denied. (*Village of Saratoga Springs* v. *Saratoga G., E. L. & P. Co.,* 191 N. Y. 123; *Atchison, Topeka & Santa Fe Ry. Co.* v. *United States,* 284 U. S. 248; *Los Angeles Gas & E. Corp.* v. *Railroad Comm.,* 289 U. S. 287; *Great Northern Railway Co.* v. *Weeks,* 297 U. S. 135.) The validity of the orders of the Commission must be decided as of the date of their issuance, upon evidence in the record and not in the light of present price levels. (*People ex rel. McCabe* v. *Board of Fire Commissioners,* 106 N. Y. 257; *People ex rel. O'Callahan* v. *French,* 123 N. Y. 636; *People ex rel. N. Y. & Queens Gas Co.* v. *McCall,* 219 N. Y. 84.)

LEHMAN, J. The relator is a corporation which furnishes and distributes water in the city of Utica and its vicinity. By chapter 715 of the Laws of 1931, which added article 4-B to the Public Service Law (Cons. Laws, ch. 48), the Public Service Commission was given specified powers of supervision and control over such corporations. In July, 1931, pursuant to provisions in the statute, the water company filed with the Commission a schedule of rates for water service. The company notified the Mayor of the city of Utica that the rates in that schedule were not sufficient to afford a fair and reasonable return upon its property, but that it was willing to forego a higher rate sufficient to yield such return until business con-

ditions improved. The city of Utica did not accede to the company's claim that the proposed rates were insufficient to yield a reasonable return on the company's property. It promptly filed with the Commission a complaint against the rates in that schedule. Thereupon the company filed a schedule increasing its proposed charges. By stipulation the second schedule of rates was suspended until the determination of the proceedings based upon the complaint of the city and some of the surrounding villages. On June 28, 1933, the Commission made an order which directed that the company reduce the rates contained in its first schedule and which it had previously charged. An application of the company for a rehearing was denied. Then the company obtained an order of certiorari. The Appellate Division by a divided court confirmed the determination of the Commission.

The Public Service Commission held hearings for more than a year in which the company and the city had full opportunity to present evidence in regard to every relevant factor in the proper determination of what rates would be reasonable and would be sufficient to yield a fair return on the company property. The last hearing was held on December 23, 1932. The matter was finally submitted to the Commission on March 1, 1933. Two of the Commissioners joined in a report in which they found that the " fair value of all of the property of the Consolidated Water Company of Utica, N. Y., used and useful in rendering water service to its consumers is $5,850,000." " That the company is entitled to a return of 6% upon such fair value," and that " the company should decrease its rates to effect a reduction in its revenues of at least $120,000 per annum." The two Commissioners in their report set forth at length the evidence upon which they based these findings, and the weight which they gave to each factor which in their opinion should enter into a determination of value. Another Commissioner concurred in the report, and

two other Commissioners filed concurring opinions stating in effect that they reached the same result but by different reasoning. The majority of the Appellate Division in confirming the determination stated in a *per curiam* opinion: " The principal questions raised relate to the determination by the Commission of the value of relator's property used and useful in the public service. This is a question of fact and there is ample evidence to sustain the determination below." (245 App. Div. 866.)

Upon this appeal, the appellant maintains that the determination of the value of its property is arbitrary, based on erroneous methods, without competent evidence to support it, and is confiscatory; that the return of six per cent allowed by the Commission is inadequate and unreasonable; that the order of the Commission to reduce its rates results in the confiscation of the company's property; that the appellant had an absolute right to a rehearing for the purpose of showing that after the hearing there had been a marked rise in prices; that the appellant had a right to have questions of fact relating to the issue of whether the rate is confiscatory, determined by the Appellate Division, through the exercise of its independent judgment. The appellant urges that through these errors it has been deprived of its property in violation of the provisions of the Constitution of the State and of the Fourteenth Amendment to the Constitution of the United States.

The classic formula for the ascertainment of the fair value of property used by a corporation for the convenience of the public is stated in *Smyth* v. *Ames* (169 U. S. 466): " In order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock; the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are

all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property " (p. 546). In subsequent cases in the same court the formula has been reconsidered at times, and even restated in somewhat different form. We do not pause to analyze these separate decisions and opinions. In one case some factor may be given a weight which has been denied to it in another case. There may be variation in emphasis in these cases and at times a difference of opinion among judges not only as to the relative weight to be given to particular factors, but even as to whether a particular factor must in all circumstances be given any weight. Nevertheless, the guiding principle consistently followed in all cases is that value depends upon varying and often unstable factors and often must be determined by prophecy as to probable change of conditions. Consistently the court has rejected the possibility of formulating a rigid standard which may be mechanically applied in measuring values in all circumstances. Every factor which may reasonably affect the determination of value in a particular case must be given the weight which it deserves. Earlier decisions may guide judgment in analogous cases; they are not intended to constrain judgment under circumstances where reason points to other conclusions.

The Commissioners who held the hearing received all the evidence, then available and offered, which upon any theory suggested by either side might be material and relevant upon the questions which the Commission was called upon to decide. In the report they made, consideration was given to each factor which the Supreme Court, in any case, had said or implied might be an element of value. To some of these factors, little if any weight was given and the determination of value rests almost exclusively upon the testimony of witnesses called by the complainants or by the Commission. In regard to each matter of substance the report contains an

exhaustive statement of the reasons which influenced the choice of the Commissioners who joined in the report. The arguments of this appellant are not without force that the reasons given for the choice are not always sound. As we have said, two of the Commissioners who joined in the decisions of the Commission did not concur in the reasons for the decision given in the report. Perhaps the judges of this court might, if they were triers of fact, give greater weight to the testimony and the theories of the experts produced by the company than the Commission has given. In this court the determination of the Commission upon any question of fact is not open to review. We may reverse a decision or annul a determination only for erroneous determination of a question of law, and after careful consideration of the appellant's argument, we find no errors there. Upon every point where the determination of the Commission is challenged we find that there is evidence to support the conclusion of the Commission and room for the exercise of choice.

In its determination of the value of the tangible property of the company, the Commission gave preponderant effect to the estimate, made by a contractor, of the cost of replacement of the property at the time when the estimate was made, i. e., May, 1932. The valuation is challenged on many grounds. We consider first the ground that the cost of reproduction based on prices prevailing in a period of unusual depression does not fairly reflect actual value.

Current or " spot " prices fluctuate, and cost of reproduction based on such prices constitutes a variable measure of value. (Cf. *West* v. *Chesapeake & Potomac Tel. Co.*, 295 U. S. 662; *McCardle* v. *Indianapolis Water Co.*, 272 U. S. 400.) In May and June, 1932, the fact could not be ignored that the country was suffering from the effect of a depression of unusual severity, and that there had been a precipitate decline in prices. If the decline was only temporary, a valuation of property

based upon the cost of reproduction measured by such prices would furnish insecure ground for prediction of what rates would, probably, be sufficient to afford a reasonable return upon the " value " of the property in the future during the period when such rates would be in effect. (Cf. *Georgia Ry. & P. Co.* v. *Railroad Commission*, 262 U. S. 625.) Even so, the cost of reproduction at current or spot prices is a factor to be considered, and at times, indeed, the dominant factor in fixing present values, and a value so fixed may be the starting point for prophecy of future values. (*McCardle* v. *Indianapolis Water Co., supra; Los Angeles Gas & Elec. Co.* v. *Railroad Commission*, 289 U. S. 287.) Prophecy, though based on past experience, is uncertain, and the probable trend of prices is a matter upon which the opinion of qualified students of economics and economic history may properly be asked.

In this case two university professors testified that in their opinion the trend of prices was definitely downward and in spite of temporary fluctuations would continue downward thereafter. Based upon that testimony, the Commission found that the cost of reproduction based upon the spot or current prices of May, 1932, constituted in the circumstances of the case a fair criterion of value. There can hardly be serious doubt that the Commission could reasonably have accepted the opinion of these witnesses at the time it was given. Its decision was, however, rendered a year thereafter. The trend of prices during that period was a matter of economic history, not of prophecy. The question presented is whether the Commission could then fix rates intended to continue in the future, based upon an opinion or prophecy given a year before.

If the opinion or prophecy of the expert witnesses given in May, 1932, was proven wrong by events occurring during the interval, the Commission could, of course, not base any finding upon the discredited opinion. If the Commission was bound to take judicial notice of

such events, its decision must be based upon them rather than upon the discredited prophecy. If proof of such events was necessary, it might be offered by a party who challenged the opinion. In any case the party who attacks the correctness of the decision must show that intervening events have destroyed the force of the opinion testimony upon which the decision is based.

We know now that in the interval of a year between June, 1932, and June, 1933, a continuous rise in prices began. The opinion of the expert witnesses that the trend of prices was downward and the prophecy of the Commission based thereon were, we now know, mistaken. The Commission was bound to determine the present value of the company's property " to make possible an ' intelligent forecast of probable future values ' in order that the validity of *rates for the future* may be determined." (*Los Angeles Gas & Elec. Co.* v. *Railroad Commission, supra*, p. 311.) The Commission in determining the rates for the future could act only upon data known at that time. The determination *must* be based upon prediction and is not invalid if it is based upon prediction which is reasonable. Otherwise rates could never be fixed in advance. In reviewing the determination, the court can ordinarily consider only whether the Commission acted reasonably and in accordance with the evidence available at that time. The problem then is whether the facts which the Commission knew or which the company offered in *June, 1933*, conclusively prove that the valuation of the company was erroneous.

The appellant further maintains that the Commission acted erroneously as matter of law in failing to give more weight to its proof of the book value of the property. The book value of the property in this case is the cost of the property to the appellant. (*Matter of New York Edison Co.* v. *Maltbie*, 271 N. Y. 103; *People ex rel. Iroquois Gas Corp.* v. *Public Service Comm.*, 264 N. Y. 17.) The appellant was incorporated in 1899. It acquired the assets of existing corporations in exchange for capital

stock and bonds issued by it in the amount of over four million dollars. The original or historical cost of the property so acquired does not appear, and there is nothing to show that it had any relation to the amount of the purchase price in stocks and bonds which the appellant company paid in 1899. The amount shown upon the books of the original companies was only a fraction of the new " book value " attached to the same assets after they were bought by the appellant. Under these circumstances we cannot find that the Commission erred in giving preponderant weight to cost of reproduction less depreciation over " historical value," cost to the appellant or " book value."

It is said, however, that in this case the proof is not of cost of reproduction of the appellant's property but of cost of reproduction of another plant which might be just as good. (Cf. *McCardle* v. *Indianapolis Water Co.*, 272 U. S. 400.) It is true that the estimate of cost of reproduction is not based upon the use of exactly the same materials or methods used in the original construction. None the less, the estimate is the cost of reproduction of the company's plant and property by the use of materials and methods which would produce a system substantially if not exactly similar. That estimate furnishes a criterion of value which is not unreasonable.

Many other objections to the valuation have been raised by the appellant and considered by the court. We do not desire to extend the opinion by discussion of them. We find no error of law in the record, and we agree with the Appellate Division that there is evidence to sustain the determination of the Commission. We have said that even the Appellate Division may not substitute its own judgment of what is reasonable in place of the determination of the Public Service Commission. (*People ex rel. New York & Queens Gas Co.* v. *McCall*, 219 N. Y. 84; affd., 245 U. S. 345.) Upon the

hearing of an order of certiorari to review a determination of the Commission, the jurisdiction and power of the Appellate Division are defined and limited by section 1304 of the Civil Practice Act. These powers do not include an independent consideration by the court of any question of fact. It is true that a determination by a legislative or administrative body on a question of fact is not binding upon a court where the power of the legislative or administrative body is challenged. (Cf. *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287; *Crowell* v. *Benson,* 285 U. S. 22; *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38.) Even so, where the State gives to an administrative body power to determine questions of fact by judicial inquiry subject to review in the courts, no Federal rights are denied by its order unless " there was such a want of hearing or such arbitrary or capricious action on the part of the Commission as to violate the due process clause of the Constitution." Except in the form of judicial *review* the courts do not examine the question whether the evidence *preponderates* for or against a conclusion. (*People ex rel. New York & Queens Gas Co.* v. *McCall, supra,* 245 U. S. at p. 348.)

The only question which remains is whether it may be said as matter of law that a return of six per cent per annum is confiscatory. The basic principles which determine what annual rate will constitute just compensation have been set forth in *Smith* v. *Illinois Bell Telephone Co.* (282 U. S. 133). The rate may vary, as the return on the value of other investments attended by corresponding risk and uncertainties varies. We cannot say that in 1933 a rate of six per cent was unreasonable. (Cf. *Indianapolis Water Co.* v. *McCart,* 89 Fed. Rep. [2d] 522.)

The order should be affirmed, with costs.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Order affirmed.