STATEN ISLAND EDISON CORPORATION, Appellant, *v.* MILO R. MALTBIE et al., Individually and Constituting the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondents.

Third Department, November 14, 1945.

*Naylon, Foster and Shepard,* attorneys *(Jackson A. Dykman, Edmund B. Naylon, Royal F. Shepard* and *George Foster, Jr.,* of counsel), for appellant.

*Philip Halpern, Counsel to Public Service Commission (George H. Kenny* and *Samuel R. Madison* with him on the brief), for respondents.

*Ignatius M. Wilkinson, Corporation Counsel (Francis J. Blou-stein* and *Harry Hertzoff* of counsel), for the City of New York, *amicus curiæ.*

HEFFERNAN, J. Plaintiff, a corporation engaged in the production, purchase, distribution and sale of electricity throughout Staten Island in the borough and county of Richmond, is appealing from orders of the Albany Special Term of the Supreme Court (ELSWORTH, J.) which (1) granted defendants' motion for judgment on the pleadings dismissing the complaint under rule 112 of the Rules of Civil Practice; (2) denied plaintiff's motion for a temporary injunction and (3) denied plaintiff's motion to strike out the separate defenses contained in the answer and from the judgment entered thereon.

On November 10, 1936, defendants instituted an investigation of the accounts and records of plaintiff. A year later the proceeding was broadened to include an investigation of plaintiff's rates and charges. While the investigation was in progress defendants, on May 27, 1943, ordered the establishment of temporary rates pursuant to section 114 of the Public Service Law.

Plaintiff instituted an action in equity to restrain enforcement of the order prescribing temporary rates. On motion of defendants the Special Term dismissed the complaint for failure to state a cause of action and for want of jurisdiction. This

court (267 App. Div. 72) and the Court of Appeals (292 N. Y. 611) upheld the judgment of dismissal.

Our court did not base its decision on the ground " that certiorari was the exclusive remedy and that a suit in equity would not lie " as asserted in the brief of defendants' counsel. Our judgment was placed solely on the ground that no question of confiscation can arise in a case involving only temporary rates because of the recoupment provisions of the temporary rate statute.

The temporary rates have been in effect since August 1, 1943.

On June 19, 1945, defendants made an order prescribing final rates to be charged by plaintiff for electric services furnished to its consumers on and after July 1, 1945. The effective date of the order was later extended to September 10, 1945.

Plaintiff then instituted the present plenary action in equity in which it seeks a judgment permanently enjoining the enforcement of the temporary and final rate orders on the ground that its property is being taken without just compensation through the imposition of rates which are confiscatory.

The Special Term granted defendants' motion for judgment on the pleadings on the ground that a review by certiorari under article 78 of the Civil Practice Act is the exclusive remedy of plaintiff. On such a motion the allegations in the complaint must be taken as established facts. The defenses contained in defendants' answer may not be considered (*Lipkind* v. *Ward,* 256 App. Div. 74).

The principal question before us in this case is the sufficiency of the complaint. Do the facts alleged in that pleading entitle plaintiff to maintain this action or must it have recourse to a certiorari proceeding to redress its alleged grievances?

It is not necessary to discuss the allegations contained in the complaint other than to say that it specifically and unequivocally charges that the temporary and permanent rates prescribed by defendants are confiscatory. As to that issue plaintiff contends that it is entitled to the exercise of the independent judgment of the court as to the law and the facts and that the remedy by certiorari is inadequate.

So far as our research goes the question for decision here has never been directly passed upon by this court or the Court of Appeals. We referred to it in *Matter of Pennsylvania Gas Co.* v. *Pub. Serv. Comm.* (211 App. Div. 253) and again in *Matter of New Rochelle Water Co.* v. *Maltbie* (248 App. Div. 66).

In rate regulation the Public Service Commission acts in a legislative capacity (*Matter of Brooklyn Union Gas Co.* v.

*Maltbie,* 245 App. Div. 74). The commission is a creature of the Legislature and is its *alter ego* in rate making (*Matter of International Ry. Co.* v. *P. S. Comm.,* 226 N. Y. 474; *People ex rel. Joline* v. *Willcox,* 129 App. Div. 267, affd. 194 N. Y. 383; *Prentis* v. *Atlantic Coast Line,* 211 U. S. 210).

A review in certiorari of defendants' orders will not give plaintiff adequate relief. In such a proceeding we cannot substitute our judgment upon the facts for that of the commission. We review only questions of law and do not examine the facts further than to determine whether there was substantial evidence to sustain the determination (*Matter of New Rochelle Water Co.* v. *Maltbie, supra*).

We are convinced that a utility may maintain an action in equity in this State for relief against confiscation resulting from an order of defendants. It is not enough to bar equitable relief that a doubtful remedy at law exist. Such remedy must be adequate to afford full redress, both in respect to the final relief sought and the mode of obtaining it. In order to preclude the granting of relief by a court of equity the remedy at law must be sufficient, full and complete, and efficient to the attainment of the ends of justice.

Where constitutional rights of property are involved a litigant should not be turned out of the Supreme Court with the curt admonition that he must submit his grievance to the mercy of administrative officials. Neither should the court confess its inability to comprehend and intelligently decide the issues involved where confiscation is alleged. It does not limit or impair any useful function of the commission for the court to pass upon such a charge. If, after a trial, the court should adjudge that the rate fixed by defendants is confiscatory it does not fix the rate; it merely suspends enforcement of the confiscatory rate and remands the matter to defendants for the prescription of a new rate.

The novel argument is made that the Supreme Court should decline to take jurisdiction of the cause and try the issues because of the length of time necessary for trial. The time element should not deter the court in the performance of its duty.

It must be kept in mind that the only question for determination on this appeal is the sufficiency of the complaint. From the allegations of that pleading and the inferences to be drawn therefrom we hold that it is sufficient to give appellant its day in court. We express no view as to the procedure to be followed at the trial. That problem is for the trial court.

It would serve no useful purpose to attempt to analyze the numerous cases pressed upon our attention by counsel for the interested parties. No case is cited to sustain the proposition that a rate determination may not be attacked and annulled in a court of equity if the utility can show that constitutional requirements have been ignored. Where confiscation is alleged, as in the case before us, the utility is entitled to an independent investigation of the facts by a court in a plenary suit in equity.

The constitutionality of an act of the Legislature is reviewable in a court of equity. " The public service commission is the delegate of the Legislature; and regulation by the one is regulation by the other." (*Matter of International Ry. Co.* v. *P. S. Comm.*, 226 N. Y. 474, 479, *supra*.) If an act of the Legislature is reviewable in the courts certainly the act of its delegate is likewise reviewable.

Defendants contend that the case of *People ex rel. Consol. Water Co.* v. *Maltbie* (275 N. Y. 357) is decisive of the question involved here. We do not so interpret that decision and certainly the United States Supreme Court did not when the case reached that tribunal (303 U. S. 158). In dismissing the suit the court said: " 1. Appellant contends that it is entitled to the exercise of the independent judgment of a court as to the law and the facts with respect to the issue of confiscation and that such a review has not been accorded because of the limitations imposed by the state practice in certiorari proceedings. 275 N. Y. at p. 370 * * *. Appellant has no standing to raise this question as appellant itself sought review by certiorari and has not invoked the plenary jurisdiction of a court of equity and *it does not appear that this remedy is not available under the state law. Matter of Pennsylvania Gas Co.* v. *Public Service Comm'n*, 211 App. Div. 253, 256; * * * *Matter of New Rochelle Water Co.* v. *Maltbie*, 248 App. Div. 66, 70 ". (Emphasis supplied.)

In the case last cited the Court of Appeals was dealing with a certiorari proceeding and not with the right to a plenary action in equity. The relator in that case was reviewing the determination of defendants under article 78 of the Civil Practice Act and not by a suit in equity. Where a litigant has available both the remedy of certiorari and a cause of action in equity and elects to proceed in certiorari he is restricted to the limited review provided therein.

In the case at bar plaintiff has elected to invoke the aid of a court of equity. In our judgment it is entitled to do so.

The orders and judgment appealed from should be reversed on the law and facts, with costs to appellant, the four separate defenses contained in defendants' answer are stricken out and plaintiff's motion for a temporary injunction is granted on condition that plaintiff file an appropriate bond to protect all persons in the event that the relief sought in this action should be ultimately denied. The form and sufficiency of the bond shall be approved by a justice of this court.

HILL, P. J. The Supreme Court of the United States is the final authority as to confiscation and the taking of private property for public use without due process and compensation. Appellant seeks to raise these issues by a suit in equity, asserting that rates fixed by the commission are confiscatory, and that its property will be taken without due process, in violation of the Fourteenth Amendment. The Public Service Commission contends that resort may not be had to equity as the State, they say, has provided a remedy and review by law (Civ. Prac. Act, art. 78).

Counsel seem to agree that as of 1920 (*Ohio Valley Co.* v. *Ben Avon Borough,* 253 U. S. 287) this suit might have been maintained. Of this there is no question, as the prevailing opinion says: '' The order here involved prescribed a complete schedule of maximum future rates and was legislative in character. [Citations.] In all such cases, if the owner claims confiscation of his property will result, the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment. [Citations.] ''

It is asserted by counsel for the commission that the *Ben Avon* doctrine (*supra*) has been repudiated by the Supreme Court of the United States, and that such repudiation '' was foreshadowed '' in the concurring opinion of Justice BRANDEIS in *St. Joseph Stock Yards Co.* v. *U. S.* (298 U. S. 38 [1936]). In that case the prevailing opinion was written by Chief Justice HUGHES. He discusses the constitutional limits as to rate making, and the prohibition concerning the taking of private property for a public use without due process and just compensation, and says that when the Legislature acts directly, it is subject '' to judicial scrutiny and determination in order to prevent the transgression of these limits of power '' and that a legislative agent is subject to the same constitutional

limitation; " Legislative agencies, with varying qualifications, work in a field peculiarly exposed to political demands. Some may be expert and impartial, others subservient. It is not difficult for them to observe the requirements of law in giving a hearing and receiving evidence. But to say that their findings of fact may be made conclusive where constitutional rights of liberty and property are involved, although the evidence clearly establishes that the findings are wrong and constitutional rights have been invaded, is to place those rights at the mercy of administrative officials and seriously to impair the security inherent in our judicial safeguards." Earlier in the opinion, and citing the *Ben Avon* case among others, he says: " Here, a large capital investment is involved and the main issue is as to the alleged confiscation of that investment. A preliminary question is presented by the contention that the District Court, in the presence of this issue, failed to exercise its independent judgment upon the facts." This was held to be error. In a concurring opinion Justice BRANDEIS says: " Like the lower court, I think no good reason exists for making special exception of issues of fact bearing upon a constitutional right " and Justices STONE and CARDOZO concurring say: " We think the opinion of Mr. Justice BRANDEIS states the law as it ought to be, though we appreciate the weight of precedent that has now accumulated against it." Such was the discussion which, according to the commission's counsel " foreshadowed " the abandonment of the *Ben Avon* doctrine. Two years later *United Gas Co.* v. *Texas* came before the court (303 U. S. 123). In regard to that case the commission's counsel says: " The *Ben Avon* doctrine was reduced to an absurdity ". The opinion there was written by Chief Justice HUGHES. He discussed the contention of the appellant that in the trial in the Texas court, State statutes and decisions were not observed and stated that it was not the function of the Supreme Court to decide local questions but only to deal with the claimed violation of Federal rights; " as to the requirement of due process under the Federal Constitution, appellant contends that it was denied the independent judicial judgment upon the facts and law to which it was entitled [citing the *Ben Avon* case *inter alia*]. The proceeding in the State court undoubtedly purported to afford an independent judicial review." This was concurred in by Justice BRANDEIS and the justices who concurred with him in the *St. Joseph* case. The dissenters here were Justices McREYNOLDS and BUTLER. Their opinion states: " Mr. Justice BUTLER and I are of opinion that the judgment under review

should be reversed. We adhere to the doctrine announced in *Ohio Valley Co.* v. *Ben Avon Borough,* 253 U. S. 287, and often reaffirmed.'' The reason for their dissent was the failure of the Texas court to furnish an '' adequate opportunity to submit the, law and facts relevant to the controversy to a fair judicial tribunal for determination according to its own independent judgment.'' The prevailing opinion found that an independent review was provided, and also reaffirmed the *Ben Avon* doctrine.

Counsel for the commission asserts that the repudiation of the *Ben Avon* doctrine '' was completed '' in *Railroad Commission* v. *Oil Co.* (310 U. S. 573). In that suit the protection of the Fourteenth Amendment was invoked in connection with an oil proration order made by the Texas Railroad Commission, which affected the respondent's oil wells. A Texas statute permitted the Railroad Commission to regulate the amount of oil which a well might produce. This was fixed at 2.32% of its '' hourly potential.'' There were, however, marginal wells of small production which, if their productive capacity was limited to the percent named, would have to be abandoned. The statute dealing with these permitted the commission to abandon the hourly formula and allow a production up to 20 barrels a day from each well. Under the percentage formula, the more productive wells averaged only about 22 barrels a day. The unfairness of this was the basis of the litigation. The opinion states that the divergent claims of the well owners present '' as thorny a problem as has challenged the ingenuity and wisdom of legislatures. * * *. In Texas, according to conventional doctrine, the holder of an oil lease ' owns ' the oil in place beneath the surface. * * *. But equally recognized is the ' rule of capture ' which subjects the lessee's interest to his neighbors' power to drain his oil away. * * *. Each leaseholder, that is to say, is at the mercy of all those who adjoin him, since oil is a fugacious mineral, the movements of which are not confined by the artificial boundaries of surface tracts.'' The statute was assailed because the State courts were not permitted to exercise an independent judgment on what was '' reasonable '' in connection with the proration order. Chief Justice HUGHES and Justice McREYNOLDS concurred in the dissenting opinion by Justice ROBERTS, who favored a reversal because the decision did not apply the principles '' found in the opinion of Mr. Justice BRANDEIS, written for a unanimous court, in *Thompson* v. *Consolidated Gas Utilities Corp.* (300 U. S. 55) * * * .'' The applicability of this

precedent to the issues here presented arises because the Texas decisions " do not make clear whether the local courts may exercise an independent judgment on what is ' reasonable ' ". (*Railroad Commission* v. *Rowan & Nichols Oil Co.*, 311 U. S. 614, 615.) The decision involves the Fourteenth Amendment, but the issues are dissimilar to those in a rate case. Highly technical training is required to determine the infiltration probabilities of the " fugacious " oil, as to which a jury of laymen would be less qualified to judge than as to the value of structures and cost of equipment used in the distribution of oil, gas or water.

In *N. Y. ex rel. Water Co.* v. *Maltbie* (303 U. S. 158) which went through this court (245 App. Div. 866) and was passed upon by the Court of Appeals (275 N. Y. 357) a petition for certiorari was dismissed by the Supreme Court. The *Per Curiam* opinion states in part: " Appellant contends that it is entitled to the exercise of the independent judgment of a court as to the law and the facts with respect to the issue of confiscation and that such a review has not been accorded because of the limitations imposed by the state practice in certiorari proceedings. * * *. Appellant has no standing to raise this question as appellant itself sought review by certiorari and has not invoked the plenary jurisdiction of a court of equity and it does not appear that this remedy is not available under the state law. [Citations] ". The foregoing bears the construction that as appellant chose the alternative review under article 78 of the Civil Practice Act, it might not be heard to complain because there had been no independent review in the State courts of the issues of fact and law. An inverse inference is permissible that a review by a plenary suit in equity would have been proper, had not the alternative course been taken. Until the Supreme Court of the United States more definitely disavows the long line of precedents, the law on the subject should be regarded as settled. Under article 78 of the Civil Practice Act, our courts do not exercise independent judgment as to law and facts.

The order and judgment should be reversed.

FOSTER, J. (dissenting). The appellant in this case asserts that rates established by the Public Service Commission amount to confiscation, and seeks to enjoin their enforcement by a suit in equity. Its complaint has been dismissed, and this appeal from the order of dismissal presents the fundamental question of whether it may sue in equity for an injunction, or, whether its sole and exclusive remedy is a certiorari proceeding under article 78 of the Civil Practice Act.

Obviously this is an important question in the field of public utility regulation. It is a simple matter to allege confiscation in any rate matter, and if such an allegation is sufficient to invoke the jurisdiction of equity then the way is open for separate trials of the same issues in every rate case; first before the commission, and later at an Equity Term of the Supreme Court. Something rather extraordinary is required to justify a procedure so protracted and cumbersome.

Appellant's case is built on the major premise that a review in certiorari is too limited to give relief. On issues of fact a review of this character has been so limited by judicial decisions that a determination by the Public Service Commission must be confirmed if there is substantial evidence in the record to sustain it (*People ex rel. Municipal Gas Co.* v. *P. S. Comm.*, 224 N. Y. 156; *Municipal Gas Co.* v. *Public Service Comm.*, 225 N. Y. 89; *Matter of New Rochelle Water Co.* v. *Maltbie*, 248 App. Div. 66). Such a determination may not be set aside even though it is against the weight of evidence (*People ex rel. N. Y. & Queens Gas Co.* v. *McCall*, 219 N. Y. 84).

Curiously enough the statute, supposed to provide a comprehensive scheme for review by certiorari, imposes no such limitation (Civ. Prac. Act, art. 78, § 1296, subds. 6, 7). Ordinarily when there has been a hearing pursuant to statutory direction, and such is the case here (Public Service Law, § 72), the reviewing court may not only determine whether there was competent proof of all the facts necessary to make the determination, but it may also set aside the determination if it finds that it was against the weight of evidence. These same provisions, in almost identical language, were a part of the Code of Civil Procedure (§ 2140, subds. 4, 5).

Equally curious is the fact that the courts of this State have never vouchsafed any full explanation of why the statute has been ignored. The precise point was raised in the *McCall* case (*supra*), but, beyond referring to some authorities which held generally that a reviewing court may not substitute its judgment for that of the quasi-judicial agency, the point was not fully discussed or explored. I assume that in all probability the complete explanation rests upon our divided system of governmental powers and responsibilities. The Public Service Commission is merely an arm of the Legislature, acting in a legislative capacity, and in this capacity it is the *alter ego* of the Legislature (*Matter of Brooklyn Union Gas Co.* v. *Maltbie*, 245 App. Div. 74; *Matter of International Ry. Co.* v. *P. S. Comm.*, 226 N. Y. 474). The fact that it also acts in a judi-

cial manner in prescribing rates, and its decisions are therefore reviewable by certiorari, does not alter the fact that fundamentally its function is legislative. The courts have never assumed the power to set aside a legislative enactment on the ground it was against the weight of evidence. They have invariably applied a basic principle of constitutional law that an act of the Legislature, within its proper field, will not be invalidated if there are any reasonable grounds to support it. As applied to a legislative finding on a question of fact substantial evidence would furnish such reasonable grounds. This, I think, is the genesis of the substantial evidence rule as applied to administrative agencies exercising legislative functions. Nevertheless, in defining the scope of certiorari the Legislature, itself, has apparently waived the application of this constitutional principle, and had the courts assumed all of the powers granted by the Legislature under article 78 of the Civil Practice Act, a review of that character would be as broad as any litigant could desire. Doubtless they have not done so because to do so in many cases, where only debatable issues exist, would constitute an invasion of the legislative sphere.

I have adverted to these fundamental, perhaps elementary matters, because in my opinion they have a decisive influence on the question before us. Rate making is an exercise of the police power and therefore a legislative function. An integral part of this function is the ascertainment of values. The Public Service Commission has made a decision on these matters relative to appellant's case. This decision is entitled to exactly the same effect as an act of the Legislature (*Matter of Helfrick* v. *Dahlstrom M. D. Co.*, 256 N. Y. 199). Under firmly accepted principles of constitutional law it may not be invalidated if there are reasonable grounds to support it. Or to put it another way, it may not be declared confiscatory if there is substantial evidence to sustain it. The logic of this view is inevitable because even if there is substantial evidence both ways then the issue is merely debatable, and the final choice must rest with the agency which exercises the legislative function.

Certiorari permits an independent review as to the only factual question a court may be concerned with when a legislative decision, arrived at in a quasi-judicial manner is challenged as being unconstitutional. I venture to say that equity could do no more. Of course if the decision was a direct act of the Legislature then it might be reviewed in equity, but since it is the result of a quasi-judicial proceeding then **certiorari is the proper remedy, but in** either instance the fundamental consti-

tutional issue is the same and must be met with the same test. The form of the complaint, or any rule of practice applied in construing a complaint in ordinary cases, cannot be used to evade those basic principles.

The Federal cases which have been cited to sustain the proposition that the State must provide a fair opportunity for submitting the issue of confiscation to a judicial tribunal for determination upon its own independent judgment are not inconsistent with this view (*Ohio Valley Co.* v. *Ben Avon Borough,* 253 U. S. 287; *Bluefield Co.* v. *Pub. Serv. Comm.,* 262 U. S. 679). In these cases the court did not define the meaning of " independent judgment ", and it does not necessarily follow from the use of this expression that a trial *de novo* on the facts was meant. There is another construction, wholly plausible, to be drawn therefrom: That the court merely intended to hold the judicial power supreme in cases involving the constitutional issue of confiscation. But this issue does not always take the same form, and this distinction makes a considerable difference as to the manner in which the judicial power shall be asserted. In cases of the character before us the *issue* of *confiscation* is not an *issue* of *opinion* as to values so as to require a separate trial in another forum to see whether a different conclusion might be reached. It runs only to the question of whether the Legislature, or the legislative agency, as the case may be, had a reasonable basis to support its decision, and, as heretofore indicated, the substantial evidence rule is a sufficient test to apply to that question. Certainly this court in a review by certiorari has power to determine such an issue upon its own independent judgment. A review of this character does not violate the due process clause of the Federal Constitution, and in this State is the exclusive remedy for a review of quasi-judicial decisions (*People ex rel. Consol. Water Co.* v. *Maltbie,* 275 N. Y. 357). The fact that in other States, and under the Federal practice, a suit in equity might be resorted to for the same purpose is of no consequence here.

The contrary view must necessarily rest upon the theory that a court of equity has some infallible standard of accuracy as to values, a breach of which impairs appellant's constitutional rights. I know of no such standard. Values are not absolute, and are notoriously matters of opinion, or conclusions to be drawn from competent testimony. One tribunal may differ with another on such an issue, but constitutional impairment does not rest in such a difference. It rests only in the question of whether the agency empowered in the first instance to deter-

mine the matter had a fair basis for its decision, and a fair basis of course excludes prejudicial, arbitrary and capricious action. It is suggested in appellant's brief that the commission may have assumed a fortiori the credibility of its own experts on values and gave credence only to their testimony. If this was intended to charge the commission with prejudicial conduct that issue may also be determined in certiorari. (*Matter of Newbrand* v. *City of Yonkers*, 285 N. Y. 164.)

The order should be affirmed.

HEFFERNAN, J., and HILL, P. J., concur in decision with separate opinions; LAWRENCE, J., concurs with HEFFERNAN, J.; FOSTER, J., dissents in an opinion in which BREWSTER, J., concurs.

Orders and judgment appealed from reversed on the law and facts, with costs to appellant, the four separate defenses contained in defendants' answer are stricken out and plaintiff's motion for a temporary injunction is granted on condition that plaintiff file an appropriate bond to protect all persons in the event that the relief sought in this action should be ultimately denied. The form and sufficiency of the bond shall be approved by a justice of this court. [See *post*, p. 781.]