STATEN ISLAND EDISON CORPORATION, Appellant, *v.* MILO R. MALTBIE et al., Individually and Constituting the Public Service Commission of the State of New York and State Division of the Department of Public Service of the State of New York, Respondents, and CITY OF NEW YORK, Intervener, Defendant-Respondent.

Third Department, November 10, 1943.

*Naylon, Aronson and Foster,* attorneys (*Edmund B. Naylon, Samuel E. Aronowitz, Royal F. Shepard* and *George Foster, Jr.,* of counsel), for appellant.

*Gay H. Brown, Counsel to Public Service Commission* (*George H. Kenny* and *Sherman C. Ward* of counsel), for respondents.

*Ignatius M. Wilkinson, Corporation Counsel* (*Harry Hertzoff* and *Herman Horowitz* of counsel), for intervener, respondent.

CRAPSER, J. The plaintiff appeals from two orders entered at Special Term upon the decision of Mr. Justice BERGAN: (1) dismissing the complaint for failure to state facts sufficient to constitute a cause of action and for lack of jurisdiction of the subject matter, and (2) denied plaintiff's application for a temporary injunction order. Plaintiff has also moved the court for a stay during the pendency of the appeals.

The primary question before the court is the question of the sufficiency of the complaint. The complaint purports to allege four causes of action, each of these incorporates as a part thereof the order of the Public Service Commission dated May 27, 1943, a copy of which is annexed to the complaint and marked Exhibit A and the essential parts of which are as follows:

" This Commission having by an order adopted on November 10, 1936, as amended by an order adopted on November 10, 1937, instituted an investigation to determine, among other things, whether the rates, charges or classifications of service of Staten Island Edison Corporation were unjust, unreasonable, unjustly discriminatory or unduly preferential and if so deter-

mined, to fix the just and reasonable rates, charges and classifications of service for the said corporation, and public hearings after due notice having been held and the Commission having determined that the public interest requires a change in certain of the rates and charges of Staten Island Edison Corporation as immediate, reasonable temporary rates to be charged by the said company pending the final determination of this proceeding and having further determined that the temporary rates herein fixed and prescribed are sufficient to provide a return of not less than 5 per cent, upon the original cost less accrued depreciation of the physical property of the said corporation used and useful in the public service, it is ORDERED:

"1. That the following rates and charges be and they hereby are fixed, determined and prescribed as temporary rates to be charged by Staten Island Edison Corporation pending the final determination of this proceeding.

"A. The total charges made to every residential, commercial and industrial consumer for electric service as computed under the rates and charges set forth in Service Classifications Nos. 1, 2 and 4 of its tariff P. S. C. No. 5 — Electricity, shall be reduced by 8 per cent."

This order was made in accordance with section 114 of the Public Service Law.

The declared object of section 114 of the Public Service Law is "to facilitate prompt action by the commission in proceedings involving the reasonableness of the rates of any public utility and to avoid delay in any such rate proceeding." To accomplish this object the Commission is authorized to require any utility "to establish, provide and maintain continuing property records," which will list all the physical property actually used in the public service, and show currently the original cost of the property and the reserves accumulated to provide for the retirement or replacement of the physical property.

The foregoing authorization enables the Commission to require utilities to keep the records and accounts therein enumerated whenever the same are deemed necessary or useful to facilitate prompt action in any rate proceeding where reasonableness of rates is involved. The subsequent provisions aim solely to facilitate prompt action and to avoid delay in fixing temporary rates pending the final determination of a rate proceeding. The provisions read as follows:

"The commission may, in any such proceeding, brought either on its own motion or upon complaint, upon notice and after hearing, if it be of opinion that the public interest so re-

quires, immediately fix, determine and prescribe temporary rates to be charged by said utility company pending the final determination of said rate proceeding. Said temporary rates· so fixed, determined and prescribed shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property of said pub‑ lic utility company used and useful in the public service, and if the duly verified reports of said utility company to the commis‑ sion do not show the original cost, less accrued depreciation, of said property, the commission may estimate said cost less de‑ preciation and fix, determine and prescribe rates as hereinbefore provided.

" Temporary rates so fixed, determined and prescribed under this section shall be effective until the rates to be charged, re‑ ceived and collected by said utility company shall finally have been fixed, determined and prescribed. The commission is hereby authorized in any proceeding in which temporary rates are fixed, determined and prescribed under this section, to con‑ sider the effect of such rates in fixing, determining and pre‑ scribing rates to be thereafter charged and collected by said public utility company on final determination of the rate pro‑ ceeding."

The four alleged causes of action may be summarized briefly as follows:

First Cause of Action. It is alleged that the " fair value " of plaintiff's property used and useful in the public service, as of December 31, 1942, is in excess of $15,914,272; that plain‑ tiff's actual earnings for the year 1942 resulted in a return of three and thirty-three one-hundredths per cent upon such " fair value "; that the company reduced its rates on May 27, 1942, and, if said reduction had been in effect during the entire year 1942, plaintiff's revenues would have been $40,000 or $45,000 less than it actually received; and that the rates prescribed by the Commission's order will result in a further reduction of annual revenue of $230,000. It is alleged that the reasonable rate of return for Staten Island Edison Corporation on its prop‑ erty is six and twenty-five one-hundredths per cent and that the rates prescribed by the Commission are confiscatory and unconstitutional.

Second cause of action. The Commission is here charged with arbitrarily and erroneously disregarding evidence of the " essential elements of valuation properly present " in the pro‑ ceeding before it " and required by law to be considered by it," such as reproduction cost, going value " and other material and

relevant factors." It is claimed that the effect of prescribing rates " upon a rate base established in the manner stated " is confiscatory and unconstitutional.

Third cause of action. Here it is alleged that section 114 of the Public Service Law is unconstitutional " in that, among other things, said statute appears to authorize the fixation of rates to be charged by plaintiff and corporations similarly situated, upon the basis of the original cost, less accrued depreciation, of the physical property of the corporation used and useful in the public service without giving effect to essential elements of valuation required to be considered, to wit, evidence of reproduction cost, going value, working capital and other material and relevant factors entering into the rate making process."

Fourth cause of action. This is based upon allegations of noncompliance by the Commission with the provisions of section 114 of the Public Service Law, and of arbitrary and capricious action on the part of the Commission in prescribing the temporary rates pursuant thereto.

In the fifth paragraph of the plaintiff's complaint it says that the original cost of the physical property of the plaintiff used and useful in the public service as of December 31, 1942, was $15,023,934. It alleges that the depreciation is $2,637,455 resulting in an original cost less depreciation of $12,386,479. It also alleges that the net earnings received in 1942 were $530,651.53. It adds to the original cost less depreciation of $12,386,479 working capital of $664,272, resulting in a figure of $13,050,751 and it alleges that the earnings for 1942 represented four and seven one-hundredths per cent on $13,050,751. It has added in to make up the figure $13,050,751 the sum of $664,272 for working capital which is not allowable under section 114.

If the issue of confiscation were involved the plaintiff would be entitled under the decisions of the Supreme Court of the United States to an independent review by the court of the facts involved upon such issue and might urge that it could only maintain such review in an equity action.

In *Matter of Bronx Gas & Electric Co.* v. *Maltbie* (271 N. Y. 364) it is said: " The Commission fixes a temporary rate pending the hearing. It is based upon the elements stated, which are not all of those required to fix a permanent rate. As before stated, this would be impossible, if we must consider in fixing a temporary rate all the elements required for the final rate: no temporary rate could ever be fixed. This also is self evident. Therefore, to meet these conditions the temporary rate is fixed, within reasonable limits, upon figures which can be with some

exactness obtained from the books of the company, showing original cost or investment; and if finally, when the proceeding ends, the temporary rate is proved to have been too low, the utility must be permitted and authorized to charge enough for its service to make up the loss. The consumer must pay what he should have paid, and the only way to do it is to fix a rate high enough to make up this loss. * * *

" Anyhow, this is no concern of the company, for its complaint here is that because of the temporary rate it will suffer loss. If the loss is made up to it in the final rate the objection is obviated. That the Commission is authorized, in fact compelled, to make up this loss, if any, through the final rate, is the meaning and must be the meaning of these words in section 114: ' The commission is hereby authorized in any proceeding in which temporary rates are fixed, * * * to consider the effect of such rates in fixing, * * * rates * * * on final determination * * *.' ' Experience ' — how much better this is than expert testimony, whether dealing in history or prophecy. * * *

" This section, as we have said, forces the Public Service Commission to consider the returns from the temporary rate and to establish the permanent rate, or the final rate, accordingly; that is, if the temporary rate has proved to be too low the final rate must make it up to the company.".

There can be no question of confiscation in this case. Section 114 of the Public Service Commission, under the holding in *Bronx Gas & Electric Co.* v. *Maltbie* (*supra*) makes it mandatory upon the Public Service Commission in fixing their final rate to examine the results to the company of the temporary rate and if the company has suffered a loss to fix the permanent rate high enough so that loss can be returned to the company. Therefore the question of confiscation cannot arise until the final rates have been established.

The appellant on page 28 of its brief says: " It is conceded on all sides that a deficiency comprising the difference between the revenues from a rate fixed *under the statute* and from a final rate sufficient to provide a fair return may be taken up under the recoupment clause and is therefore not enjoinable."

The *Bronx Gas & Electric Co.* v. *Maltbie* case (*supra*) holds absolutely that section 114 of the Public Service Law is constitutional and that any loss suffered by the company under the temporary rate must be made up to the company in the fixing of the final rate and therefore the question of confiscation cannot be present until the fixing of the final rate.

The orders and judgment appealed from should be in all respects affirmed and the appellant's motion for a stay pending the appeals should be denied, with fifty dollars costs and disbursements.

SCHENCK, J. (dissenting). I dissent on the ground that the Commission in fixing the temporary rates did not comply with section 114. While the Court of Appeals has held that this section authorizing the determining of temporary rates is constitutional (*Matter of Bronx Gas & Electric Co.* v. *Maltbie*, 271 N. Y. 364, 373), it clearly indicated that such temporary rates must be fixed in accordance with the provisions of the section, which definitely require among other things that such " temporary rates so fixed, determined and prescribed shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property of said public utility company used and useful in the public service ''.

There are no disputed questions of fact here, no answer having been interposed by the Commission. It appears from the complaint and affidavits, which therefore stand admitted, that the rates fixed by the Commission will yield two and nine tenths per cent, or a sum less than the minimum return fixed by the statute. The recoupment clause of section 114 does not warrant a disregard of the other provisions of the same section, and treating the allegations of the complaint as admitted, it must be found that the rates were not fixed in conformity with the statute and were not calculated to yield the return which the Legislature has determined to be the minimum return to which the utility is entitled.

In the circumstances, the utility must necessarily seek equitable relief. We may not hold that it must be required to continue to operate under a rate which amounts to a confiscation of its property for an indefinite period. The recoupment scheme of the statute will be of little avail if by reason of these temporary rates sufficient revenue will not be forthcoming to meet operating costs and taxes and which may result in bankruptcy.

The court below has held that " the Commission acted within the frame of its statutory powers ''. With this I cannot agree for the statute specifically provides for a minimum return which has not been afforded the utility by the Commission's orders. In authorizing the Commission to fix temporary rates, the Legislature provided definite requirements, including a minimum return of not less than five per cent. This was a condition precedent and unless the Commission proceeded in accord-

ance with this as well as all of the other provisions of the statute, the utility is entitled to equitable relief. "Even the Legislature may not confiscate petitioners' property for a year or two years or during any period, and much less the Public Service Commission without legislative power. The constitutional inhibition as to confiscation applies to temporary as well as to permanent rates." (*Matter of New York Edison Co.* v. *Maltbie*, 244 App. Div. 436.) We are not concerned with the question of a "fair return" or with the "deferment of a fair return" to be hereafter made up by the recoupment provision. The question here presented is whether the utility is entitled to a temporary rate which will afford it the minimum return guaranteed by section 114. Unless we are to consider this provision as meaningless, the answer must be in the affirmative. From the admitted allegations of the complaint the temporary rate so fixed will yield a return of but two and nine-tenths per cent. It challenges the validity of the Commission's order and the plaintiff is entitled to the independent judgment of a court of equity upon the law and the facts.

The orders and judgment should be reversed and the plaintiff's motion for temporary injunction granted.

HILL, P. J., and HEFFERNAN, J., concur with CRAPSER, J.; SCHENCK, J., dissents in a memorandum in which BLISS, J., concurs.

Orders and judgment appealed from in all respects affirmed and the appellant's motion for a stay pending the appeals denied, with fifty dollars costs and disbursements.